**TRANS-ALASKA TELEPHONE COMPA-NY, an Alaska corporation, John E. Field, William Campbell and Harley F. Rolfe, Appellants,**

v.

**FLIGHTCRAFT, INC., a corporation, Appellee.**

No. 19666.

United States Court of Appeals Ninth Circuit.

Nov. 29, 1965.

John E. Havelock, Ely, Guess, Rudd & Havelock, Anchorage, Alaska, for appellants.

John C. Hughes, Hughes, Thorsness & Lowe, Anchorage, Alaska, for appellee.

Before JERTBERG, DUNIWAY and ELY, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is an appeal in a diversity case from a money judgment in the amount of $35,158.83, plus interest, costs, and attorney fees in the amount of $2,-500.00, entered in favor of Flightcraft, Inc., a corporation organized under the laws of the State of Nevada, having its principal place of business at Portland, Oregon, plaintiff below and appellee in this court, and against Trans-Alaska Telephone Company, a corporation organized under the laws of the State of Alaska, and John E. Field, William Campbell and Harley F. Rolfe, defendants below and appellants here, for the conversion of a twin-engine Beechcraft aircraft.

Appellee at all material times was engaged in the business of selling aircraft and leasing private, non-commercial aircraft. Appellant, Trans-Alaska Telephone-Company, was a public utility corporation engaged in communication service within the State of Alaska. The individual appellants were officers of said corporation.

By written lease dated the 2nd day of February, 1960, on a lease form supplied by Beech Acceptance Corporation, Inc., and designated "LEASE", Flightcraft, Inc., leased to Trans-Alaska Telephone Company, a twin-engine airplane therein described as a "Beechcraft." By written assignment similarly dated Flightcraft, Inc., assigned its interest in the lease to Beech Acceptance Corporation, Inc., its successors and assigns.

The term of the lease was for sixty months, and provided for rental payments aggregating $141,748.00, payable in fifty-nine monthly installments of $2,-145.80 per month and a final monthly installment of $15,145.80. The lessor

acknowledged that it had received from lessee the sum of $13,000.00.

"To be held by the LESSOR as security for the faithful performance of all terms, conditions and agreements of this lease; and the said sum, if not applied toward payment of back rent or toward payment of damages suffered by LESSOR by reason of any breach hereunder by LESSEE, may at LESSEE'S option, be applied to the final payment due under this lease, or will be returned to LESSEE upon the LESSEE'S full and complete compliance with all terms, conditions and agreements of this lease. In the event of any repossession of said airplane by LESSOR due to LESSEE'S default hereunder, LESSOR may apply the said security upon all damages suffered as a result of said default, and may retain said security to apply on such damages as may be suffered or which accrue thereafter by reason of said default and breach."

The lease granted to lessee the option to purchase the airplane on or before the expiration of the forty-eighth month of the lease for the sum of $141,748.00, and also granted to lessee:

"the option to terminate this lease at any time during the term hereof, by delivering possession of the airplane to LESSOR, and by paying to LESSOR the sum set forth in the following table:

| | |
|---|---|
| 1 through 12 months | $24,600.00 |
| 13 through 24 months | $18,000.00 |
| 25 through 36 months | $15,900.00 |
| 37 through 48 months | $14,600.00 |
| 49 through 60 months | $13,000.00 |

LESSOR shall apply the amount of the initial security payment remaining at the termination of the lease against the above said sum due."

Other pertinent provisions in the lease are:

"In the event that LESSEE defaults in any of the provisions or in any of the terms, conditions and covenants to be performed hereunder

upon the part of the LESSEE, * * *, then in such event LESSOR, at its option, may declare that the option to terminate granted by LESSOR to LESSEE has been exercised by LESSEE and LESSEE shall immediately become liable to LESSOR for the performance of the termination obligations as set forth in this paragraph above."

"In the event LESSEE should fail to perform said termination obligations, LESSOR may take immediate possession of the airplane * * *, and LESSEE shall be liable to LESSOR for the payment due upon termination as herein set out as liquidated damages and not as a penalty."

"LESSEE agrees that upon the termination of this lease, LESSEE will return said airplane to LESSOR in the same and as good a condition as when received by LESSEE, normal wear accepted. In the event the LESSEE does not return the airplane in such condition, the LESSOR may make any repairs necessary to restore the airplane to such condition, and the LESSEE agrees to reimburse the LESSOR for any expense involved for said restoration."

"During the term of this lease, the LESSEE shall have complete use of the airplane; however, such use shall be restricted to the ordinary purposes of LESSEE'S business and pleasure. * * * LESSEE shall not operate said airplane for hire. * * *; nor use the airplane for any purpose other than that stipulated in the insurance policies, unless it first notifies the LESSOR in time for the LESSOR to approve of said operation and obtain proper insurance coverage for the intended trip. The cost of any additional insurance shall be borne by LESSEE."

Paragraph 14 of the lease, in pertinent part, provides:

"LESSEE agrees not to assign this lease or any interest therein without prior written consent of LESSOR, or to sublet said airplane

or to part with the possession of same, * * *. In the event that the LESSEE sublets or attempts to sublet same, or * * * parts with possession of same, * * *, then in either or any of these events this lease shall at the option of the LESSOR immediately terminate and LESSOR shall be entitled to immediate possession of said airplane. LESSEE agrees to pay all attorney's fees, collection charges or other expense, occasioned by LESSEE'S failure to abide by any of the provisions hereof."

"LESSEE and LESSOR hereby agree that no representation, statement or agreement other than those set forth herein shall be binding upon either of the parties hereto unless specified in writing, signed by each, and purporting to be an express modification of this contract. * * *."

Trans-Alaska made thirteen monthly payments in the amount of $2,145.80 each, aggregating $27,895.40, and in mid-February, 1961, notified Flightcraft, Inc., and Beech Acceptance Corporation, Inc., of its intent to terminate the lease and requested instructions as to procedures to be followed. By letter dated February 21, 1961, Trans-Alaska was informed by Beech Acceptance Corporation, Inc., that in order to terminate the lease Trans-Alaska would be required to pay the additional sum of $5,000.00.

The sum of $5,000.00 plus the security deposit of $13,000.00 totalled $18,000.00 which was the amount required under the lease to be paid in the event of termination occurring during the period of thirteen through twenty-four months of the term of the lease.

By letter dated February 22, 1961, directed to Trans-Alaska, Flightcraft, Inc., endeavored to dissuade Trans-Alaska from proceeding with such intended termination, and stated, *inter alia,*

"We realize you have a legal right to return the aircraft, subject to certain conditions, and have no inten-

tion of disputing its return if you elect to do so."

By letter dated March 6, 1961, Trans-Alaska notified Flightcraft, Inc., that its decision to terminate the lease was final and on March 5th or 6th, 1961, Trans-Alaska returned the airplane to Flightcraft, Inc., at its Portland, Oregon place of business. On March 31, 1961, Trans-Alaska forwarded to Beech Acceptance Corporation, Inc., the sum of $5,000.00 together with "a check for $95.22 for accrued past due charges as indicated in your letter of February 21." The transmittal letter enclosing such checks stated:

"The subject airplane was delivered to Flightcraft, Inc., in Portland, Oregon on March 4, 1961. Prior to delivery to Flightcraft, Inc., there was a 100-hour inspection completed by an authorized Beechcraft service station in Wichita, Kansas.

"Since we have complied with all of the provisions of the lease and your letter of February 21, 1961, we consider the matter concluded."

Flightcraft, Inc., retained possession of said airplane and almost a year later, on February 20, 1962, accepted a purchase order on said airplane for the sum of $65,000.00 from Alaska Barge and Transport, Inc. The purchase order required Flightcraft, Inc., to overhaul the engines of the airplane and submit it to a periodic inspection. Flightcraft, Inc., overhauled the airplane at a cost of $13,361.24, and made the periodic inspection at a cost of $797.59. Following such overhaul and inspection the airplane was delivered to the purchaser in mid-March of 1962. During the period that the airplane was in possession of Flightcraft, Inc., following its return by Trans-Alaska, the airplane was used by Flightcraft, Inc., for demonstrating and income producing flights from which Flightcraft, Inc., received $2,199.98.

Following the sale of the airplane and on March 27, 1962, Flightcraft, Inc., filed its complaint against the appellants, the gravamen of which charged that the ap-

pellants on or about February 8, 1960, converted the airplane to their own use by deceitfully surrendering and turning over the airplane to one Robert P. Walker to be used in an air charter business, contrary to paragraph 14 of the lease, which in pertinent part is set forth above, and in violation of representations made by appellants during negotiations leading up to the execution of the lease agreement.

It is further alleged in the complaint that the appellants:

"[I]n placing the subject aircraft in the hands of other third persons to be used for charter hire and commercial purposes, contrary to the agreement entered into on the 2nd day of February, 1960, converted the same and so diminished the value of the aircraft by excessive use, wear and tear that when the aircraft was finally returned to this plaintiff on March 6, 1961, its resale value had diminished to $41,000.00 to the loss and damage of this plaintiff in the amount of $43,000.00 all because of the conversion, deceit and breach of lease conditions on the part of the defendants."

The complaint further alleges that the acts on the part of the appellants in surrendering the plane to Walker for charter and commercial use were not discovered by plaintiff until after the airplane had been returned to the plaintiff on March 6, 1961.

Following trial to the court, the district court among its findings of fact found:

"[T]hat the rental by the defendants of the N 681Q as disclosed by the evidence, by which the control of this aircraft was vested in other third persons and was used in charter work for the business of other third persons was a violation of both the lease and the provisions of insurance policy; and that these acts on the part of the defendants amounted to a conversion of the aircraft commencing on the 8th day of February, 1960; that the defendants failed to maintain accurate logbooks on the N 681Q during the life of the lease; that the aircraft in question was excessively used; that the aircraft was returned in bad condition at the time that it was left, during the nighttime hours, on March 5th or 6th of 1961 at the plaintiff's hangar in Portland.

"The plaintiff did not discover the excessive use and conversion of N 681Q until after it was returned to the plaintiff on March 5th or 6th, 1961. * * *."

and that a payment of a penalty of $18,000.00 upon surrender of the aircraft to the plaintiff was admitted by the plaintiff.

In the findings the court computed plaintiff's damages as follows:

| "Agreed value at time of lease | | $116,000.00 |
|---|---|---|
| Less depreciation during term of lease | | 30,000.00 |
| | | |
| Value after depreciation | | $ 86,000.00 |
| Less Recovery: | | |
| Gross proceeds from sale | $65,000.00 | |
| Less Engine-propeller overhaul and inspection | 14,158.83 | |
| | | |
| Net recovery | | 50,841.17 |
| | | |
| Net loss due to conversion | | $ 35,158.83." |

As conclusions of law the district court found defendants were guilty of deceit and conversion by acts of dominion wrongfully exerted over the aircraft in question, in a manner inconsistent with the lease agreement and in derogation of the contract between the parties; that the defendants converted the aircraft commencing with the 8th day of February, 1960, since the conversion was not discovered until 1961, the damages are determined in view of all of the circumstances bearing on the question.

On the entire record before us, we deem it unnecessary to pass upon the findings and conclusions of the district court that appellants converted the aircraft. Assuming, without deciding that the evidence is sufficient to support the findings of conversion, which we seriously doubt, nevertheless, the judgment must be reversed for the reasons hereinafter stated.

It is clear that Trans-Alaska purported to exercise its option to terminate the lease in compliance with the provisions of the lease. Trans-Alaska notified Flightcraft, Inc., and Beech Acceptance Corporation, Inc., of the exercise of its option to terminate. The aircraft was returned to Flightcraft, Inc., and retained by it. The security payment of $13,000.00 was credited on the obligation imposed by the termination provisions and the balance of $18,000.00 required to be paid on termination, in the amount of $5,000.00, was paid by Trans-Alaska, together with payment of $95.22 for accrued past due charges.

Shortly thereafter Flightcraft, Inc., discovered the acts which it now claims amounted to a conversion of the aircraft. Notwithstanding such discovery Flightcraft, Inc., did nothing to question or challenge the right of Trans-Alaska to exercise the option to terminate. It retained the termination payment which Trans-Alaska made, kept the airplane, and thereafter used the aircraft during the following year for demonstration and income-producing flights. It restored or rehabilitated the aircraft in February and March, 1962, a year after the return of the airplane by Trans-Alaska, and sold the same to Alaska Barge and Transport, Inc.

In these circumstances it must be deemed that Flightcraft, Inc., waived the right to maintain an action for conversion and that the only cause of action, if any, which it had at the time of filing its complaint was for a breach of that provision of the lease which provided that upon termination of the lease that the aircraft be returned to Flightcraft, Inc., "in the same and as good a condition as when received by lessee, normal wear excepted." Flightcraft, Inc., asserted no such cause of action in its complaint and offered no evidence as to the cost of "any repairs necessary to restore the plane" to "as good a condition as when received by lessee, normal wear excepted", if the airplane when returned was in not such condition.

The judgment appealed from is reversed.